

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

GERALD BISHOP, ]
]
    Plaintiff, ]
]
vs. ]
] CV-98-N-0452-S
PHILLIP W. HUMPHRIES, ]
]
    Defendant. ]

ENTERED
NOV 2 8 2000

**MEMORANDUM OF OPINION**

**I.   Introduction.**

This case is before the court on Motion for Summary Judgment by defendant Phillip W. Humphries (Doc. No. 26). In addition, defendant's Motion to Strike Affidavit (Doc. No. 34) is before the court. The motions have been fully briefed and are ripe for decision. Upon due consideration, the defendant's Motion for Summary Judgment is **DENIED** and defendant's Motion to Strike is **DENIED**.

**II.   Statement of Facts.**[1]

On February 23, 1997, Deputy Sheriff Weatherly ("Weatherly") took a criminal mischief report from Nathan Bean. Someone had cut Mr. Bean's fence and let his horses out. In connection with Mr. Bean's report of criminal mischief, Weatherly called Deputy Sheriff Phillip W. Humphries ("Humphries") and requested that Humphries obtain certain suspect information–the name and date of birth of a suspect Weatherly had listed in his

---

[1] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).



report. Humphries then met with Weatherly, and Weatherly told Humphries the nature of the offense and that someone said Justin Bishop did it. Weatherly told Humphries he had tried to call the Bishop home but had gotten no answer and asked Humphries to go by the house.

When Humphries arrived at the house, he went to the front door and knocked but there was no answer. Humphries was dressed in his uniform as a Jefferson County Deputy Sheriff and had traveled to the Bishop home in a marked Jefferson County Sheriff's Department vehicle. While he waited briefly at the door, the Bishops arrived home in their car. The Bishop family had been in Florida on vacation. Gerald Bishop ("Bishop"), Justin Bishop's father, exited his car and asked Humphries something to the effect of "Can I help you?" Humphries explained to Bishop that Weatherly was investigating a crime and that Humphries needed to obtain information concerning Justin Bishop, a suspect in the cutting of the fence. Bishop told Humphries that he was Justin's father, that the family had been out of town for eight days in Key West, that it was impossible for Justin to have been involved in any criminal mischief, and that he was tired of everyone blaming everything that happened on Justin. The parties do not agree on much of the rest of the conversation between Bishop and Humphries.[2] Bishop said in his deposition for this case that "I think at one point I asked him who the complainant was, and he told me that that was basically none of my business." (Opponent's Responsive Submission in Resp. to Ex. "D" of the Court's Order, Ex. 4 at 20.) Bishop asserts that Humphries asked him Justin's age, which

---

[2] The plaintiff's submission to the court did not include a statement of additional facts, as requested by Exhibit D of the court Initial Order in the case, and therefore the court was left to sift through Bishop's deposition to determine much of his side of the story.

Bishop told Humphries. At some point Humphries asked for Justin's birth date, and Bishop did not provide that information. Bishop also told Humphries that if there was any further questioning, he wanted his attorney present. Bishop asserts he then told Humphries, "I'm through answering your questions, I would like you to leave." (*Id.* at 33.) At some point, according to Bishop, Humphries "told me I was obstructing governmental operation, and that he would be back to get me, pointing his finger at me and shaking his fist. That's what he told me as he was leaving." (*Id.* at 34.) Humphries eventually left the home and notified Weatherly that he was unable to obtain the suspect information Weatherly had requested earlier. Humphries also notified his supervisor, Sergeant Max James ("James"), regarding what had happened. James told Humphries to write a report, to review the statute, and to check with the magistrate because he felt like Bishop might be in violation of the law.

Humphries prepared Alabama Uniform Incident/Offense Report 9702-4244, dated February 23, 1997, which discusses the incident at the Bishop's home. The following business day, Humphries went to see District Court Magistrate Carolyn Herndon ("Herndon"), as suggested by his supervisor, and prepared a written deposition.

The written deposition describes the incident in the following manner:

> I was attempting to locate and identify a subject for an investigation of Criminal Mischief (JCSD Case #9702 4223). The subject was a juvenile residing at this address. I spoke with the legal guardian, Mr. Gerald Eugene Bishop. Mr. Bishop was informed of the circumstances of the investigation, and stated that he did not care what was being investigated, that his son held no responsibility. I explained to Mr. Bishop that I needed his son's date of birth for the investigation. Mr. Bishop refused to give any information, and stated that if I needed to speak to him in the future, I could contact his attorney. He was advised of the state law 32-10-2, but again refused to cooperate.

(Movant's Evidence Submitted in Resp. to Ex. "D" of the Court's Order, Ex. 4.)  Herndon reviewed Humphries written deposition and issued a warrant for the arrest of Bishop.

When Humphries next returned to work after he obtained the arrest warrant from Herndon, he and Deputy Verbitski ("Verbitski") executed the warrant, arresting Bishop at his home.  When Humphries and Verbitski arrived at the Bishop's home on February 26, 1997, Humphries may have informed Bishop that he had a warrant for his arrest.  Bishop claims Humphries said something to the effect of "Come over here, empty your pockets, you're under arrest, and I'm taking you to jail."  Humphries told Bishop to turn around and place his hands behind his back.  Humphries then handcuffed Bishop and searched his person for weapons and found none.  Humphries then walked Bishop to his car and placed him in the back seat.  Humphries informed Bishop of his Miranda rights.  At some point after Bishop had already been seated in the car but before Humphries sat down in the car, Bishop complained to Humphries that the handcuffs were too tight and Humphries at least looked at the handcuffs and determined they were not too tight.  Humphries drove Bishop to the Jefferson County jail in downtown Birmingham and delivered him to the booking officer.

Plaintiff alleged nine counts in the complaint.  Plaintiff now withdraws count two, and admits that the court should find for defendant on counts six, seven, and eight.  The remaining counts will be addressed below.  Count one alleged an unlawful arrest under the Fourth and Fourteenth Amendments through 42 U.S.C. § 1983.  Count three alleges excessive force under the Fourth and Fourteenth Amendments through 42 U.S.C. § 1983.  Count four alleges malicious prosecution under the Fourteenth Amendment through 42

U.S.C. § 1983. Count five alleges false imprisonment under the Fourth and Fourteenth Amendments through 42 U.S.C. § 1983. Defendant claimed he was qualifiedly immune.

### III.     Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial;

however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11 (1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV.   Discussion.

### A.   Counts One, Four, and Five.

Three of the counts in plaintiff's complaint, counts one, four, and five, are based on the allegation that Humphries arrested Bishop without probable cause and deceived the magistrate in the deposition presented to the magistrate to establish probable cause.

#### 1.   Legal Standard.

> Qualified immunity protects government officials performing discretionary functions from civil trials (and other burdens of litigation, including discovery) and from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.' . . .
> That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*. . . . Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit. [citation omitted] Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity.

*Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994). Moreover, "[f]or the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law." *Id.* Further, "the circumstances that confronted the government actor must have been '"materially similar"' to prior precedent to constitute clearly established law because '"*public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases.*"' [citation omitted] 'For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*.' [citation omitted] Consequently, qualified immunity is a sharply focused, situation-bound analysis." *Crosby v. Paulk*, 187 F.3d 1339, 1345 (11th Cir. 1999).

### 2.  Probable Cause.

> [W]hen considering qualified immunity, the issue is 'not probable cause in fact, but arguable probable cause. Actual probable cause is not necessary for an arrest to be objectively reasonable. Indeed, it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable. (citation omitted) Thus, in applying the qualified immunity test in the context of a claim of an unlawful arrest, 'we must determine whether reasonable officers in the same circumstances and possessing the same knowledge as the Defendants would have believed that probable cause existed to arrest Plaintiff . . . .'

*Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997) (citation omitted). Stated another way, the defendant must have "reasonably . . . believed that [plaintiff's] actions on

- 8 -

that date violated" the statute. *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998).

In the instant case, the plaintiff does not meet the high standard explained above. Plaintiff does not cite a case that supports its contention that the law is clearly established on this issue. In fact, the case law in the Eleventh Circuit before February 1997, the date of the incident at the center of this case, had not clearly established Humphries' actions to be a violation of law. It does appear, however, that under current law, the plaintiff could maintain that the defendant violated clearly established law.[3] This is not relevant, though, to the court's decision as the law at the time of the incident must have provided notice that Humphries' actions were a violation of law.

### 3. Deceiving the Magistrate.

"[T]he law was clearly established in 1993 that the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable

---

[3]This case is similar to *Sheth v. Webster*, 145 F.3d 1231 (11th Cir. 1998) and *Thornton v. City of Macon*, 132 F.3d 1395 (11th Cir. 1998). In *Sheth*, plaintiff alleged false arrest and malicious prosecution after a police officer, who had interposed himself into a dispute, arrested the plaintiff for basically arguing with him. The plaintiff argued with the officer, and after the plaintiff told the police officer that "Police officers don't know all the laws, either, but I know some laws and my rights," plaintiff was arrested. *Sheth*, 145 F.3d at 1234. The *Thornton* case involved two plaintiffs, Thornton and Cravey, who were charged with obstruction of a law enforcement officer. The officer went to Thornton's home on behalf of Thornton's former live-in girlfriend, in order to give Thornton a set of keys. In exchange for the keys, the officer would ask Thornton to give him a mattress that belonged to the former girlfriend. After the officers arrived at Thornton's home and told him of the exchange they came to carry out, Thornton told the officers to leave the premises and he went inside his home. The officers then forced their way into the apartment and arrested him. Cravey, an acquaintance of Thornton, pulled up in his truck and saw Thornton being led to a police car. Cravey approached the police officers to ask if he could go inside Thornton's home and Cravey was arrested for obstruction. *Id.* at 1398. The plaintiffs' actions in that case were proper because the plaintiffs were under no duty or legal requirement to do what the police officer told them to do. *See Thornton*, 132 F.3d at 1399-1400; *cf. Whiting v. Traylor*, 85 F.3d 581, (11th Cir. 1996) (noting, in a case in which a Section 1983 plaintiff was arrested for not telling police officers his name after being questioned about a boat registration sticker, that plaintiff's arrest for obstruction was later explained to have been brought only to hold the plaintiff until a more serious charge was brought). In both cases the defendant police officers were not protected by qualified immunity. Further, this case is distinguishable from *Post v. City of Fort Lauderdale*, 7 F.3d 1552 (11th Cir. 1993) and other similar cases because the defendant makes no claim that the plaintiff was using or attempting to use force to stop the police officer from completing his duties. *Post* is different from the case at bar because the law in that case made it a crime to even attempt to obstruct an officer. In addition, one of the plaintiffs, Abilio Lirio, alleging a false arrest, raised his hands to the police, which could have been interpreted as a sign of resistance to the police operation going on at the time. *Post*, 7 F.3d at 1559.

cause for an arrest in order to detain a citizen and, thus, that qualified immunity will not shield [defendant] from liability for such false statements, if such false statements were necessary to the probable cause." *Jones v. Cannon*, 174 F.3d 1271, 1285 (11th Cir. 1999). "[A] warrant affidavit violates the Fourth Amendment when it contains omissions 'made intentionally or with a reckless disregard for the accuracy of the affidavit.' [citation omitted]. A party need not show by direct evidence that the affiant makes an omission recklessly. Rather, it "is possible that when the facts omitted from the affidavit are clearly critical to a finding of probable cause the fact of recklessness may be inferred from proof of the omission itself. [citation omitted]" *Madiwale*, 117 F.3d at 1326-27.

In this case, Humphries' motion for summary judgment fails because his false statements and omissions were critical to a finding of probable cause by the magistrate. Humphries stated in his deposition presented to Magistrate Herndon that "Mr. Bishop refused to give any information." (Opponent's Evidentiary Submission in Resp. to Exhibit "D" of the Court's Order, Ex. 3a.)  The plaintiff claims he gave defendant the following information:  he was Justin Bishop's father; Justin was thirteen years old; Justin lived at 2723 Ray Way, Birmingham, Alabama: Justin had red hair; Justin rode a motorcycle; and if Humphries wanted to ask Bishop anymore questions, he would have to call Bishop's attorney.  Further, Humphries failed to mention in the deposition that Bishop did not want to provide any further information because his son was with him in Key West, Florida during the time of the incident for which Humphries was collecting information. Humphries stated in the deposition that "[Bishop] did not care what was being investigated, that his son held no responsibility."  In fact, Bishop said in his deposition for this case that "I think at one point I asked him who the complainant was, and he told me that that was basically none

of my business." (Opponent's Responsive Submission in Resp. to Ex. "D" of the Court's Order, Ex. 4 at 20.) Further, according to Bishop, he and Humphries discussed some of the details of the alleged criminal mischief.

The facts used to establish probable cause in the deposition Humphries presented to Herndon are disputed, and viewed in a light most favorable to the plaintiff, these statements are false. Therefore, summary judgment for the defendant is **DENIED** as to Counts One, Four, and Five.

### B.    Count Three:  Excessive Force.

The Eleventh Circuit has stated that in "excessive force cases, 'qualified immunity applies unless application of the standard would inevitably lead every reasonable officer in [the position of defendant officer] to conclude the force was unlawful." *Nolin v. Isbell,* 207 F.3d 1253, 1255 (11th Cir. 2000) (citation omitted). Whether an officer used excessive force turns on a number of factors, such as 'the severity of the crime, whether the suspect posed an immediate threat, and whether the suspect [was] resisting or fleeing. Use of force must be judged on a case-by-case basis . . . .'" *Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1997) (citation omitted). "[I]n making the highly fact-intensive excessive force inquiry, a court may conclude that an officer retains qualified immunity when the facts show a minimal amount of force combined with a minor or nonexistent injury." *Nolin*, 207 F.3d at 1257 n.3.

The facts viewed in a light most favorable to the plaintiff show that the plaintiff's handcuffs were too tight, defendant may or may not have physically checked the tightness of the handcuffs (although the defendant did at least look at the handcuffs after the plaintiff complained), and plaintiff now suffers from pain, numbness, and nerve damage. The court

must also consider that the crime for which plaintiff was charged was not severe and plaintiff did not resist arrest nor did he attempt to flee. Due to the claim of lasting injuries by the plaintiff, the peaceful nature of the arrest, and the relative lack of seriousness of the crime, a factual dispute does exist as to whether defendant used excessive force when arresting plaintiff. Defendant's motion for summary judgment as to count three is **DENIED**.

### V.     Motion to Strike Affidavit of William T. Gaut.

Motion to Strike is **DENIED**. The defendant alleges that "the Plaintiff has failed to supply the court with sufficient predicate for the substance of the opinions expressed in the affidavit of William T. Gaut." (Motion to Strike at 1). The court finds there is no support for this allegation.[4] In the first two pages of Mr. Gaut's affidavit, he explains his background and experience. He served as a police officer for 24 years, retiring as Captain of Detectives. He holds a Bachelors Degree in Criminal Justice and a Masters Degree in Public and Private Management. He has taught criminal justice courses at the college level. In forming his opinions in this case, Mr. Gaut reviewed the depositions of Humphries, Bishop, and Herndon, in addition to the transcript of the Bishop's state court trial. The court finds no lack of "predicate" here.

---

[4] In addition, the defendant's allegation is somewhat vague. Further, defendant cites two cases, without directing the court to certain pages or information in the cases. The court has reviewed those cases and finds no support for defendant's allegations.

An appropriate judgment will be entered with this memorandum of opinion.

Done, this 28th of November, 2000.

_____
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE